[Cite as *State v. Alqahtani*, 2026-Ohio-1335.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ABDULLAH M. ALQAHTANI,

    DEFENDANT-APPELLANT.

CASE NO. 2-25-11

OPINION AND
JUDGMENT ENTRY

Appeal from Auglaize County Municipal Court

Trial Court No. 2025 TRD 05151

**Judgment Affirmed**

**Date of Decision: April 13, 2026**

APPEARANCES:

    *Abdullah M. Alqahtani*, **Appellant**

    *Joshua A. Muhlenkamp* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Abdullah Alqahtani ("Alqahtani"), brings this appeal from the September 11, 2025 judgment of the Auglaize County Municipal Court finding him guilty of speeding. On appeal, Alqahtani asserts the court erred by admitting radar evidence without sufficient proof of proper calibration and operation of the radar device. He also argues that the trial court's finding of guilt was against the manifest weight of the evidence and the court abused its discretion by denying his motion for a continuance. For the reasons that follow, we affirm the judgment of the trial court.

*Facts and Procedural History*

{¶2} On July 13, 2025, at approximately 1:37 a.m., while traveling northbound on State Route 66 in Auglaize County, Ohio State Highway Patrol Trooper Colin Costin ("Trooper Costin") observed Alqahtani's vehicle traveling southbound toward his cruiser. Trooper Costin visually estimated that Alqahtani's vehicle was traveling at a rate of speed that exceeded the speed limit of 55 miles per hour. He confirmed this suspicion by utilizing his standard issue BEE III radar device which indicated Alqahtani was travelling at 72 miles per hour. Trooper Costin issued Alqahtani a traffic citation, charging him with speeding in violation of R.C. 4511.21(D)(1). The citation was filed in the Auglaize County Municipal Court on July 14, 2025.

{¶3} On July 15, 2025, Alqahtani filed a written plea of not guilty. The court accepted his plea and set the case for trial on August 14, 2025. On August 11, 2025,

Alqahtani filed a motion to continue the trial. This motion was granted, and the trial was set for August 28, 2025. On August 13, 2025, Alqahtani requested another continuance to obtain additional discovery. The trial court denied the request.

{¶4} At the August 28, 2025 bench trial, Trooper Costin testified that he performs a calibration check on the device at the beginning and end of each shift, including the shift during which he pulled over Alqahtani. Trooper Costin further stated that on the day in question the device was in good working order and that, as an Ohio State Highway Patrol officer, he was qualified to use the radar device. Additionally, the State entered the radar certification document into evidence which showed the device was calibrated on June 4, 2025, with the calibration certification expiring on December 1, 2025. At the conclusion of the trial, the court took the matter under advisement.

{¶5} The trial court filed a judgment entry on September 11, 2025 finding Alqahtani guilty of speeding in violation of R.C. 4511.21(D)(1). The court imposed a $100 fine. Alqahtani timely appealed, setting forth three assignments of error.

### First Assignment of Error

**The trial court abused its discretion by admitting the radar evidence without sufficient proof of proper calibration and operation, in violation of R.C. 4511.091 and relevant case law.**

### Second Assignment of Error

**The trial court's finding of guilt was against the manifest weight and sufficiency of the evidence, as the prosecution failed to prove the elements of speeding beyond a reasonable doubt.**

{¶6} At the outset, we address the glaring misapplication of case law presented in the brief Alqahtani submitted to this court. We find the citations provided at best vaguely support appellant's claims and at worst are either completely irrelevant to the matter at hand or, in at least one example of a case cited, do not seem to exist. Nevertheless, given this brief was submitted by a self-represented party, with the claimed errors presenting non-complex issues, we decline to sua sponte strike the brief and dismiss the appeal, choosing instead to afford a measure of grace and consider the merits of the assignments of error.[1]

*First and Second Assignments of Error*

{¶7} In his first and second assignments of error, which we address together, Alqahtani contends that the trial court improperly admitted evidence of the radar device used by Trooper Costin, and his guilty conviction was founded on insufficient evidence and is against the manifest weight of the evidence.

*Standards of Review*

{¶8} Although Alqahtani cross-examined Trooper Costin about the radar device, he did not object to the admission of the radar device evidence at trial. Therefore, the

---

[1] "*Pro se* litigants are held to the same rules and procedures as those litigants who retain counsel." *Jones v. Booker*, 114 Ohio App.3d 67, 70 (10th Dist. 1996), quoting *Meyers v. First Nat'l Bank*, 3 Ohio App.3d 209, 210 (1st Dist. 1981). Accordingly, a pro se litigant may not knowingly "make a false statement of fact or law to a tribunal." Prof.Cond.R. 3.3(a)(1). Furthermore a pro se litigant must not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation" or "engage in conduct that is prejudicial to the administration of justice." Prof.Cond.R. 8.4(c)-(d). "It is well established that courts possess inherent authority to manage proceedings essential to their function, to control the conduct of those who appear before them, and to sanction conduct that abuses the judicial process." *State v. Coleman*, 2026-Ohio-965, ¶ 39 (11th Dist.). Striking a filing containing fabricated and misplaced authority is an appropriate remedy a court could employ. *See, id*. at ¶103-104.

admission of this evidence is reviewed for plain error, and not abuse of discretion as Alqahtani contends. *State v. Mitchell,* 2019-Ohio-5168, ¶ 35 (3d Dist.). "For this Court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *Id.* "[E]ven when the minimum requirements have been met, a reviewing court should still be conservative in its application of plain-error review, reserving notice of plain error for situations involving more than merely theoretical prejudice to substantial rights." *State v. Steele*, 2013-Ohio-2470, ¶ 30, citing *State v. Long*, 53 Ohio St.2d 91, 94 (1978). "Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

{¶9} As to Alqahtani's second assignment of error, the concepts of sufficiency of the evidence and manifest weight of the evidence are legally distinct. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio.St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence

was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶10} Finally, when reviewing whether a conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Williams*, 2024-Ohio-2307, ¶ 22 (3d Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sewell*, 2016-Ohio-7175, ¶ 8 (3d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶11} "To prove a case of speeding based on the reading of a radar gun, [the State] is required to show the accuracy and reliability of the device; that the unit was in good condition for accurate work; and the operator's qualifications by training and experience

to use the device." *State v. Helke*, 2007-Ohio-5483, ¶ 7 (3d Dist.).[2] "[T]he results of a speed-measuring device using either radar or laser technology are admissible in court without expert testimony establishing, or the court taking judicial notice of, the reliability of the scientific principles underlying that technology. However, the fact-finder is required to determine whether the evidence presented concerning the accuracy of the particular speed-measuring device and the qualifications of the person who used it is sufficient to support a conviction based on the device's results." *City of Brook Park v. Rodojev*, 2020-Ohio-3253, ¶ 19. The trial court relied on *Rodojev* in its judgment entry for a finding that, based on the evidence presented at trial, the radar device in question was accurate, in proper working condition, and its operator was sufficiently qualified.

{¶12} Alqahtani claims that the trial court's reliance on *Rodojev* was misplaced, because *Rodojev* still requires case-specific proof of the radar unit's accuracy and operation. Indeed, in *Rodojev* the Supreme Court of Ohio indicated that although the results of a speed-measuring device are admissible without expert testimony, "determinations involving the sufficiency and weight of the evidence [are still] to be made on a case-by-case basis." *Id*. at ¶18. The record shows that such case-specific proof of accuracy and operation of the radar device were provided as part of the State's case against Alqahtani.

---

[2] Appellant incorrectly cites R.C. 4511.091 as the source for this rule. While R.C. 4511.091 addresses the arrest of an individual based on radar and other devices, it does not place such a burden on the prosecution as Alqahtani claims.

**{¶13}** "The trial court is the finder of fact in a bench trial." *Harrold v. Homsher*, 2002-Ohio-4688, ¶ 20 (3d Dist.). It is the job of the fact finder to weigh the evidence and determine the credibility of the witnesses and, as such, may choose to believe a witness in all of their testimony, some of their testimony, or to discredit them entirely. *In re K.S.*, 2026-Ohio-79, ¶ 16 (3d Dist.). In the present case, Trooper Costin testified that he had properly completed the necessary calibration checks, that the radar device was in good working condition, and that he was qualified as a graduate of the Ohio State Highway Patrol Academy to use the device. As fact-finder, the court found this testimony sufficient to admit the radar evidence in order for the State to prove beyond a reasonable doubt that Alqahtani was speeding. We find that Trooper Costin's testimony along with the radar certification document submitted into evidence, viewed in the light most favorable to the prosecution, was sufficient proof from which any rational fact finder could determine the accuracy of the speed-measuring device and the qualifications of its operator to support a conviction based on the device's results.

**{¶14}** Similarly, we find the trial court's guilty verdict was not against the manifest weight of the evidence. Alqahtani claims that Trooper Costin displayed an argumentative demeanor during the traffic stop and would not advise him of the reason for the stop until Alqahtani first provided identification. At trial and in his appellate brief he attempted to claim the trooper's alleged confrontational behavior evidenced a "preconceived notion [that] could have colored his testimony on the radar reading and visual estimate, further tipping the manifest weight against conviction." In contrast, Trooper Costin testified that

he followed proper protocol, the order of questions during a traffic stop holds no significance, and there is no script given to state highway patrol troopers to follow when conducting a traffic stop.[3] Alqahtani's accusation of prejudice does not refute the evidence that he was travelling over the speed limit.

{¶15} Giving the fact-finder its appropriate discretion in weighing the evidence and assessing the credibility of the witness, we do not find this to be an exceptional case manifesting a miscarriage of justice such that a new trial must be ordered. The State established Trooper Costin's qualifications and the functionality of the speed-measuring device at trial. Alqahtani did not present adequate evidence to refute these established claims.

{¶16} Alqahtani's argument in his first assignment of error that the trial court erred by admitting the radar evidence was based on the trier of fact's assessment of the credibility of Trooper Costin's testimony. Consequently, because we find the admittance of the radar device testimony sufficient, we do not make a finding of plain error as to the admission of the radar evidence showing Alqahtani was traveling at 72 miles per hour.

{¶17} In addition, on appeal Alqahtani argues for the first time that Trooper Costin's actions were contrary to the steps required in the manual for the BEE III radar device, the specific device used by the trooper to record Alqahtani's speeding violation. Although Alqahtani attached to his brief what appears to be various excerpts from the manual, the

---

[3] Moreover, Alqahtani fails to offer any support for the notion that an officer must state the reason for a traffic stop before requesting identification from a driver, nor can we find any such requirement in the law to that effect.

actual manual was not presented as part of his cross-examination of Trooper Costin, so it cannot be considered for the first time on appeal. *See*, *Grove v. Grove*, 2001-Ohio-2109, ¶ 5 (3d Dist.) ("Evidence not part of the record that is attached to an appellate brief cannot be considered by a reviewing court.") Alqahtani purports to cite multiple cases for the proposition that there is a burden on the prosecution to show that strict calibration requirements were met in accordance with the BEE III radar manual. We find the cases cited are misapplied and irrelevant as to the arguments presented by Alqahtani such that they do not warrant further discussion.

{¶18} Finding no plain error in the admission of the radar device evidence, we overrule the first assignment of error. Further, we conclude the record provides sufficient evidence to support the finding of guilt and the trial court's verdict was not against the manifest weight of the evidence or a miscarriage of justice. Accordingly, we overrule the second assignment of error.

## Third Assignment of Error

**The trial court abused its discretion by denying Appellant's motion for continuance to obtain discovery, prejudicing the defense in violation of Crim.R. 16.**

{¶19} In his third assignment of error, Alqahtani contends that he was prejudiced when the trial court denied his motion to continue the trial in order for him to obtain additional discovery.

*Standard of Review*

**{¶20}** "The grant or denial of a continuance is within the sound discretion of the trial judge and we will not reverse a determination regarding a continuance absent an abuse of discretion." *City of Fostoria v. Flinders*, 2020-Ohio-4263, ¶ 23 (3d Dist.). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State ex rel. Edwards v. Toledo City School Dist. Bd. Of Edn.*, 72 Ohio St.3d 106, 107 (1995).

*Analysis*

**{¶21}** "The Supreme Court of Ohio has created a list of factors to be considered in evaluating a motion for continuance, which includes: the length of delay requested, whether other continuances have been requested and received; inconvenience to litigants, witnesses, and the trial court; whether the delay is for legitimate reasons or dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances giving rise to the request, and any other relevant factors." *Flinders*, at ¶ 24, citing *State v. Unger*, 67 Ohio St.2d, 65, 68 (1981).

**{¶22}** Upon examining the record in this case, we find the trial court was properly within its discretion in refusing to grant the continuance. Specifically, in his letter to the court in response to the denial of his motion to continue and at trial, Alqahtani requested additional time to obtain "full officer notes", a "radar log", and body camera footage. In the same letter, Alqahtani confirmed that the prosecution "provided all available material."

{¶23} At trial, Trooper Costin testified he is not required to keep a log of the radar calibration checks he performs at the beginning and end of each of his shifts, and the State reiterated that all available notes and materials had been delivered to Alqahtani pursuant to his discovery request. Alqahtani has not directed our attention to any legal authority that states a radar log is required to be kept by an officer operating such a device. Nonetheless, Alqahtani persisted in his request for a document that does not exist. Alqahtani acknowledged on the record that he was in possession of officer notes included with the citation that contain a "brief narrative" of the events surrounding his traffic stop but contends that the "full officer notes . . . are missing." Beyond Alqahtani's assertion, he points to no proof or facts that would create a reasonable inference that a radar log or more detailed notes exist and were withheld from him. As to his request for the body camera footage, we find Alqahtani's contention bizarre, because in his pretrial correspondences with the trial court not only does he admit the prosecution provided him with the body camera footage, he describes in some detail what is found on the recording.

{¶24} Given that the record demonstrates the prosecution complied fully with Alqahtani's discovery request, we do not find the trial court abused its discretion in denying Alqahtani's motion for a continuance. Appellant's third assignment of error is, accordingly, overruled.

*Conclusion*

{¶25} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued in the assignments of error, we affirm the judgment of the Auglaize County Municipal Court.

***Judgement Affirmed***

**WILLAMOWSKI, and WALDICK, J. J., concur.**

Case No. 2-25-11

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge


_____
John R. Willamowski, Judge


_____
Juergen A. Waldick, Judge

DATED:
/jlm